[Civ. No. 62205. Second Dist., Div. Three. Sept. 23, 1982.]

CITIZENS CAPITAL CORPORATION et al.,
Plaintiffs and Appellants, v.
JAMES CATHCART, as Chief, etc., et al.,
Defendants and Respondents;
RICHARD SPOHN, as Director, etc., Real Party in Interest
and Respondent.

**COUNSEL**

Zeutzius & LaBran and Ronald M. LaBran for Plaintiffs and Appellants.

No appearance for Defendants and Respondents.

George Deukmejian, Attorney General, and Antonio J. Merino, Deputy Attorney General, for Real Party in Interest and Respondent.

OPINION

DANIELSON, J.—Various corporate and individual appellants have appealed from the denial of their petition for writ of mandate to review a decision of the Department of Consumer Affairs on an accusation by the Bureau of Collection and Investigative Services (hereafter the Bureau), finding violations of various sections of the Business and Professions Code.

PROCEDURAL FACTS

In 1976, Douglas Faigin, chief of the Bureau, signed accusation No. 703 before the Department of Consumer Affairs, against various licensed collection agencies and individuals, charging numerous violations of the Business and Professions Code and Administrative Code governing collection agency·practices.

On April 22, 1977, Faigin signed an amended and supplemental accusation charging further violations.

A stay was issued by the superior court prohibiting proceedings on accusation No. 703 (2d Civ. 54172).

On or about February 15, 1978, a new accusation (No. 707) was filed, signed by Ms. Koene Cohen, then chief of the Bureau. Appellants concede in their brief and allege in their writ petition that the new accusation signed by Ms. Cohen was substantially the same as the one signed by Mr. Faigin.

On July 18, 1978, the collection agency parties petitioned the superior court in a separate proceeding for a writ of prohibition and stay order regarding accusation No. 707, on the basis that Koene Cohen was marrying John Graves, a former partner of the accuseds and a competitor. On July 25, 1978, the superior court stayed the administrative proceeding. (2d Civ. 54172).

On July 27, 1978, Koene Cohen Graves petitioned this court to stay all proceedings on that writ in the superior court so that the administrative hearing could proceed (2d Civ. 54172).

On July 28, 1978, this court stayed the superior court proceedings (2d Civ. 54172).

The administrative hearing then commenced.

On motion, Koene Cohen withdrew as complainant, and Karen D. Morgan, assistant chief, became complainant. On June 11, 1979, before the hearing was completed, the administrative law judge took notice that James Cathcart had become chief of the Bureau.

In August and November of 1978 and June of 1979, an administrative law judge heard the accusation, and on February 11, 1980, filed a proposed decision, which was adopted by the Department of Consumer Affairs on March 12, 1980, to be effective April 21, 1980.

The licenses and registrations of appellants were revoked, the revocations were stayed, the licenses and registrations were suspended for 30 days, and appellants were placed on probation for 2 years.

A petition for writ of mandate was filed in this case with the superior court on April 18, 1980, to review that decision.

On March 10, 1981, after several continuances, the trial court denied the peremptory writ of mandate, after exercising its independent judgment on the evidence.

The court made findings, and judgment was entered on April 16, 1981.

### CONTENTS

■ Appellants' contentions on appeal go only to an alleged conflict of interest involving Ms. Koene Cohen, who signed the new accusation, No. 707, on which the charges were tried.

Appellants do not challenge the evidentiary support or legal basis for the findings of violations against them.

### FACTS

Insofar as relevant to the points raised on appeal, the facts are as follows:

In the petition for writ of mandate, petitioners alleged that Koene Cohen signed accusation No. 707 and that before the administrative law judge, petitioners had contended that Ms. Cohen was the "companion, fiance, or

wife of one John Graves, a former owner of CITIZENS CAPITAL [one of the petitioners], the owner of a close competitor of the petitioning corporations by his ownership of a collection agency known as Greater California Financial Services." The administrative law judge did not strike the accusation, but ordered that a new accuser be substituted. The petition also alleged that Ms. Karen Morgan, "acting chief" of the Bureau, then became the accuser, over petitioners' objections, but on order of the administrative law judge.

Petitioners further alleged that Ms. Morgan had no personal knowledge of the accusation or its veracity and that signing the accusation violated various sections of the Business and Professions Code because Ms. Morgan made no personal investigation. They also alleged that Ms. Cohen's action violated the Business and Professions Code provisions on conflicts of interest, and that Ms. Morgan's substitution did not cure the problem.

The administative law judge found, in the proposed decision, that on June 11, 1979 (before the hearing was completed), James Cathcart had become chief of the Bureau.

DISCUSSION

## I. *Accusation signed by Ms. Cohen*

Government Code section 87100 provides as follows: "No public official at any level of state or local government shall make, participate in making or in any way attempt to use his official position to influence a governmental decision in which he knows or has reason to know he has a financial interest."

Government Code section 87103 provided (in 1979) as follows: "An official has a financial interest in a decision within the meaning of Section 87100 if it is reasonably foreseeable that the decision will have a material financial effect, distinguishable from its effect on the public generally, on:

"(a) Any business entity in which the public official has a direct or indirect investment worth more than one thousand dollars ($1,000):

" . . . . . . . . . . . . . . . . . . . . .

"(d) Any business entity in which the public official is a director, officer, partner, trustee, employee, or holds any position of management.

"For purposes of this section, indirect investment or interest means any investment or interest owned by the spouse or dependent child of a public official, by an agent on behalf of a public official, by any business entity controlled by the public official . . . . A business entity is controlled by a public official if the public official, his agents, spouse and dependent children hold more than fifty percent of the ownership interest in the entity . . . ."

Even if Koene Cohen's alleged engagement and marriage to a man who owned a rival collection agency constituted a conflict under these statutes, there is still a question whether her signing a revised accusation as chief of the Bureau would constitute making, participating in, or attempting to influence a decision.

We first note that proceedings against these appellants were first begun by an accusation signed by Douglas Faigin, then chief of the Bureau. It was only when proceedings on those accusations were stayed that the new accusation was signed by Ms. Cohen.

In *Cole* v. *Los Angeles Community College Dist.* (1977) 68 Cal.App.3d 785, 791-792 [137 Cal.Rptr. 588], a police officer had been charged by his superiors with misconduct, had been discharged, and had appealed to the personnel commission. The personnel commission hearing officer found that some of the charges were true and sustained the discharge. On appeal from the superior court's denial of relief, the Court of Appeal said, "It is the bias of the tribunal deciding a case, not the bias of the person instituting the proceeding that is important." In that case, the officer had contended that the bias of his accusers affected the credibility of the witnesses, and the trial court had found that the accusers, in fact, were biased, but that their bias did not affect the decisionmakers.

In *Sodikoff* v. *State Bar* (1975) 14 Cal.3d 422, 431, [121 Cal.Rptr. 467, 535 P.2d 311], the Supreme Court pointed out that it was settled that the personal motive of the person initiating a State Bar proceeding against an attorney is not controlling, when the facts show that the attorney is subject to some disciplinary action. In that case, the court found that the record supported discipline, without the allegedly tainted testimony.

In the present case, it has not been shown that Ms. Cohen did anything other than sign, in her official capacity, an accusation, almost identical to that which had been first begun by her predecessor in office, and which was signed later by her successor in office, after the accused objected to her signature.

The hearing was conducted before an administrative law judge, whose decision was adopted by the Director of the Department of Consumer Affairs. It is not alleged that either the decision or the decisionmakers were improperly influenced, and any alleged bias of the accuser was irrelevant.

## II. *Substitution of Ms. Morgan*

The substitution of Ms. Morgan in place of Ms. Cohen as signator on the accusation during the hearing was a formality, which does not affect the substance of the hearing or the administrative decision.

First, once the hearing had commenced, the purpose of the accusation had been served, which was to initiate disciplinary proceedings. (See Bus. & Prof. Code, § 6925; Gov. Code, § 11503.)[1]

Further, Ms. Morgan was a person to whom the function of signing an accusation could be delegated. (Bus. & Prof. Code, §§ 6860, 6925, 6925.1; Gov. Code, § 11503.) She was not required to conduct a personal investigation of the allegations.

## III. *The Accusation*

In any event, there is no basis for appellants' contention that the accusation was "void" if Ms. Cohen had an interest within the meaning of Government Code section 87100. Appellants have cited no case or statute which so provides.

---

[1]Business and Professions Code section 6925 reads: "Any person aggrieved may file with the chief a written statement alleging acts of misconduct or violations of this chapter or any rule or regulation established thereunder by a licensee or employee of a licensee. All such statements shall be referred by the chief for investigation and report. [¶] It shall also be the duty of the chief to initiate and conduct investigations into the business and affairs of licensees on his own motion. [¶] The insolvency of a licensee, the adjudication as a bankrupt of a licensee or qualified certificate holder, or of a partner in a licensed copartnership, or the making of a general assignment for the benefit of creditors by a licensee or by a partner of a licensed copartnership, constitutes ground for the institution of disciplinary proceedings and revocation of license or qualification certificate or other disciplinary action."

Government Code section 11503 reads: "A hearing to determine whether a right, authority, license or privilege should be revoked, suspended, limited or conditioned shall be initiated by filing an accusation. The accusation shall be a written statement of charges which shall set forth in ordinary and concise language the acts or omissions with which the respondent is charged, to the end that the respondent will be able to prepare his defense. It shall specify the statutes and rules which the respondent is alleged to have violated, but shall not consist merely of charges phrased in the language of such statutes and rules. The accusation shall be verified unless made by a public officer acting in his official capacity or by an employee of the agency before which the proceeding is to be held. The verification may be on information and belief."

Government Code section 91003 provides, in relevant part, as follows: "(b) Upon a preliminary showing in an action brought by a person residing in the jurisdiction that a violation of Article 1 (Commencing with Section 87100) of Chapter 7 of this title or of a disqualification provision of a Conflict of Interest Code has occurred, the court may restrain the execution of any official action in relation to which such a violation occurred, pending final adjudication. If it is ultimately determined that a violation has occurred and that the official action might not otherwise have been taken or approved, the court may set the official action aside as void. The official actions covered by this subsection include, but are not limited to, orders, permits, resolutions and contracts, but do not include the enactment of any state legislation. In considering the granting of preliminary or permanent relief under this subsection, the court shall accord due weight to any injury that may be suffered by innocent persons relying on the official action."

The cases cited by appellant having to do with cancellation of government contracts are not controlling in the present situation. These cases interpreted the public contract statutes, in which the object is to prevent even the possibility of personal interest or personal gain in a direct financial transaction with the government. (See *Millbrae Assn. for Residential Survival* v. *City of Millbrae* (1968) 262 Cal.App.2d 222, 236-237 [69 Cal.Rptr. 251].)

The superior court made findings when it denied the peremptory writ of mandate. Among those findings were the following:

"26. The court finds that petitioners received due process, that the director acted within his jurisdiction, that there was a fair trial and that there was no prejudicial abuse of discretion.

". . . . . . . . . . . . . . . . . . . .

"29. The court further finds that the fact that complainant Koene Cohen Graves married a competitor did not create a conflict of interest and that there was no showing of any bias prejudicing petitioners at the hearing."

That the trial court's findings are supported by substantial evidence and are not against the law is all that this court determines on appeal.

We have considered the transcript of the administrative proceeding, which was received in evidence before the trial court, as exhibit 2 to the response of the Department of Consumer Affairs to the writ petition.

On June 11, 1979, counsel for the Bureau stated before the administrative law judge that Ms. Cohen, or Graves, was no longer the chief of the Bureau. The judge took official notice that James Cathcart had become the chief.

On August 7, 1978, the administrative law judge had heard a motion to dismiss or stay the proceedings.

The Bureau attorney pointed out that Koene Cohen had not originally signed accusation No. 703, which had begun proceedings.

There was substantial evidence to sustain the trial court's finding that the signature of Koene Cohen on the accusation did not invalidate the proceedings and that there had been a fair and impartial hearing before the administrative law judge.

## IV. *Due Process*

Appellants contend that allowing Koene Cohen to sign the accusation deprived them of due process of law. This contention is meritless.

In *American Motor Sales Corp.* v. *New Motor Vehicle Board* (1977) 69 Cal.App.3d 983, [138 Cal.Rptr. 594], cited by appellants, the state had established a tribunal to adjudicate disputes between car dealers and car manufacturers, which was required to be made up of a majority of car dealers. The court held that the tribunal, thus constituted, caused a denial of due process to a car manufacturer that came before it. The cases relied on for the holding in *American Motor Sales Corp.* involved pecuniary conflicts of interest on the part of adjudicatory boards or other decisionmakers.

No such conflict is urged in the present case.

### Disposition

The judgment is affirmed.

Klein, P. J., and Lui, J., concurred.