[L.A. No. 32075. Dec. 31, 1985.]

BRUCE D. STUART, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

840

**COUNSEL**

Gary K. Olsen for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., Ellen A. Pansky and George A. Juarez for Respondent.

**OPINION**

**THE COURT.**\*—This is a proceeding to review a recommendation of the State Bar that petitioner be suspended from the practice of law for one year, and that execution be stayed on certain conditions including a one-year probation period and passage of the Professional Responsibility Examination.

---

\*Before Bird, C. J., Mosk, J., Broussard, J., Reynoso, J., Grodin, J., Lucas, J. and Watai, J.†

†Assigned by the Chairperson of the Judicial Council.

Petitioner was admitted to the practice of law in 1973. In 1977, he was privately reproved for encouraging a third party to cash two checks that petitioner drew but later failed to honor.

The present disciplinary proceedings arise out of petitioner's representation of Angel Guzman in a personal injury suit. The hearing panel of the State Bar Court found that petitioner willfully failed to (1) communicate with the client to secure answers to defense interrogatories; (2) inform the client of the consequences of not filing timely responses to such interrogatories; (3) communicate with defense counsel or the court to obtain an extension of time to respond to the interrogatories; (4) inform the client that the defendants had filed a motion to compel answers to the interrogatories; (5) file any response to the defendants' motion to compel or appear at the hearing on the motion; (6) inform the client of the court's dismissal of his suit; and (7) inform the client of his right to seek relief from the order of dismissal.[1] The Review Department of the State Bar Court adopted the findings of the hearing panel.

Angel Guzman was injured in an explosion resulting from a punctured gas pipeline. Since he spoke little English and petitioner spoke no Spanish the accident was described to petitioner with the help of an interpreter, and petitioner agreed to represent him.

On December 22, 1977, petitioner received a set of interrogatories for the client to complete within 60 days. Petitioner was assertedly unable to locate him, and the interrogatories were never answered. The defendants' motion to compel answers was granted on April 14, 1978, and the case was dismissed on May 25, 1978.

There was conflicting testimony concerning petitioner's alleged inability to find his client. Petitioner and one of his employees testified that efforts were made to contact him by telephone and mail. Also, an employee was sent to search in his old neighborhood. Petitioner stresses two facts which made his client more difficult to locate: (1) Angel Guzman used two different surnames in different situations; and (2) he moved three times between the time the suit was filed and the suit was dismissed.

Guzman testified, however, that he fully explained his use of two names to petitioner during their first meeting, and that he notified petitioner's office

---

[1]From these findings of fact the hearing panel concluded that petitioner had violated his oath (Bus. & Prof. Code, § 6067) and duties (*id.*, § 6068) as an attorney, and committed acts of moral turpitude (*id.*, § 6106). Such conduct would constitute cause for disbarment or suspension. (*Id.*, §§ 6103, 6106.) Specifically, he is charged with acting incompetently (Rules Prof. Conduct, rule 6-101) and withdrawing from employment without taking steps to avoid prejudice to his client (*id.*, rule 2-111(A)(2)).

of his new address each time he moved. He further testified that he called the office on numerous other occasions to ask about his case, but no one would speak with him or return his calls. In response, petitioner stated that he could not remember being told about the two names and new addresses.

Other than having attempted to locate the client, petitioner did little to preserve his case: he failed to request additional time to complete the interrogatories from either the defendants or the court; he filed no answer to the motion to compel; and he chose not to argue against the motion in court, believing that to do so would be pointless.

The next meeting between petitioner and his client took place around October 1978, when the latter appeared at petitioner's office. He had heard that other plaintiffs in his case had obtained settlements[2] and wanted to know what was happening in his case. After waiting for three hours and seeing petitioner leaving his office, Guzman followed him to the parking area and asked about his case. Petitioner told him to speak with the office manager upstairs. The latter said the case was closed and refused to give the client his files.

According to petitioner's testimony, this meeting took place within the six-month period for filing a motion for relief from an order of dismissal (Code Civ. Proc., § 473), but he could not remember whether he considered making such a motion at that time. In any case, no motion for relief was filed. Additionally, Guzman testified he was never told the consequences of not answering the interrogatories in a timely manner, and he did not understand that his case had been dismissed.

In 1981, Guzman hired another attorney to take over the case. The attorney made several requests to obtain the client's file from petitioner, and finally was told the file had been lost. The attorney then asked for the case number, but petitioner had no system by which he could find the numbers of his prior cases. The attorney was not told the case had been dismissed.

### Sufficiency of Evidence

█ The standard of review for State Bar disciplinary proceedings is well established. This court "must independently examine the record, reweigh the evidence and pass on its sufficiency. [Citation.]" (*Gallagher* v. *State Bar* (1981) 28 Cal.3d 832, 838 [171 Cal.Rptr. 325, 622 P.2d 421].) However, "Where credibility of witnesses is in issue this court will give great

---

[2]Over 100 plaintiffs brought suit as a result of the accident in which Guzman was injured, and over 90 percent of those obtained settlements.

weight to the findings of the local administrative committee which saw and heard them. [Citation.] This court is reluctant to reverse the decision of the committee where the findings are based primarily on testimonial evidence or where they resolve conflicts in the evidence. [Citation.]" (*Emslie* v. *State Bar* (1974) 11 Cal.3d 210, 220 [113 Cal.Rptr. 175, 520 P.2d 991].) ■ "The burden is on the petitioner to show that the findings are not supported by the evidence or that the recommendation is erroneous. [Citations.] In meeting this burden, the petitioner must demonstrate that the charges of unprofessional conduct are not sustained by convincing proof and to a reasonable certainty. [Citations.]" (*Himmel* v. *State Bar* (1971) 4 Cal.3d 786, 794 [94 Cal.Rptr. 825, 484 P.2d 993].)

■ Petitioner contends the evidence is insufficient to support the several findings of the hearing panel that he willfully failed to communicate with his client. Giving proper weight to the panel's resolution of conflicting testimonial evidence, there is ample support for the panel's findings. First, the findings are well supported by the testimony of Guzman. Second, the hearing panel may have been influenced to give less weight to petitioner's testimony because of its inconsistencies.[3] Third, the record is replete with uncontested examples of petitioner's carelessness, which also detract from the weight of his testimony. These include (1) petitioner's failure to request additional time to answer the interrogatories from either the defendants or the court; (2) his failure to seek relief from the order of dismissal or to even discuss this option with his client; and (3) his loss of the "voluminous" file and inability to even locate the relevant case number for the new attorney.

*Fairness of Administrative Hearing*

■ Petitioner contends he was deprived of a fair hearing on two grounds. He first claims he was prejudiced by the State Bar staff attorney's premature disclosure of his prior disciplinary record to the hearing panel. Rule J.1(a) of the Rules of Practice of the State Bar Court, provides that "The admissible record in another formal disciplinary proceeding . . ., when applying only to the issue of appropriate discipline, shall not be displayed or disclosed to a hearing panel unless and until the panel finds culpability." Here the staff attorney revealed petitioner's prior record before

---

[3]Examples of inconsistencies in petitioner's testimony include the following: (1) petitioner originally testified that he directed one of his employees to find the client early in 1977, but subsequently testified this must have been late in 1977; (2) petitioner testified he was "convinced beyond a reasonable doubt" that a letter went out to the client warning him that his case might be dismissed, but then admitted he actually could not recall such a letter being sent; and (3) when he spoke with the new attorney in 1981, petitioner did not remember that the case had been dismissed nor many other details which he later testified to at the hearing.

culpability was determined, in violation of the rule. This fact does not, however, justify petitioner's request for dismissal of the proceedings.

■ This court generally requires a showing of specific prejudice before procedural errors will invalidate the determination of the hearing panel. (See, e.g., *In re Morales* (1983) 35 Cal.3d 1, 7 [196 Cal.Rptr. 353, 671 P.2d 857]; *Fitzpatrick* v. *State Bar* (1977) 20 Cal.3d 73, 82 [141 Cal.Rptr. 169, 569 P.2d 763]; *Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 449 [113 Cal.Rptr. 602, 521 P.2d 858] [cert. den. 419 U.S. 900 (42 L.Ed.2d 145, 95 S.Ct. 183)]; *Lewis* v. *State Bar* (1973) 9 Cal.3d 704, 713-714 [108 Cal.Rptr. 821, 511 P.2d 1173]; see also rule 556, Rules Proc. of State Bar ["no error in admitting or excluding evidence shall invalidate a . . . determination, unless the error or errors complained of resulted in a denial of a fair hearing"].) ■ Here the improper disclosure of the prior record was immediately objected to by petitioner's counsel, and the objection was sustained. A member of the hearing panel later stated that the panel would not consider the comment in deciding culpability. The comment was made at the end of the staff attorney's closing argument, after a clear case for culpability had been made. Under these circumstances, petitioner has not demonstrated sufficient prejudice to disturb the panel's determination.

■ Petitioner also claims he was prejudiced by the panel's admission of "irrelevant" and "highly prejudicial" testimony concerning the client's injuries. The complaint is unfounded. The testimony consisted primarily of Guzman pointing to his hand and saying: "My hand. It's broken here"; he was also allowed to testify that he had difficulty finding work because of his injured hand. These comments hardly seem likely to inflame the panel, and are relevant to show the tort claim was substantial. Petitioner's lack of diligence could be viewed more seriously in light of his client's injuries and impaired ability to find work. Even if this testimony was irrelevant, however, petitioner still fails to show that its admission deprived him of a fair hearing. (See rule 556, Rules Proc. of State Bar.)

In summary, on our independent review of the record, we conclude that the findings of the hearing panel are fully substantiated by the evidence, that petitioner received a fair hearing, and that each of his arguments lacks merit.

### *Discipline*

■ Petitioner challenges the recommended discipline on three grounds. First, he claims his prior disciplinary record was mistakenly admitted into evidence. He alleges a violation of subdivision (a) of rule J.1, Rules of Practice of the State Bar Court, which requires that he be served with a

copy of the prior record 30 days before the hearing. Inexplicably, he fails to address subdivision (b) of rule J.1, which waives the requirements of subdivision (a) upon certain conditions.[4] As these conditions were met here, the prior record was properly admitted.

■ The conduct which provides the basis for the present proceeding occurred in 1978, approximately four years before issuance of the notice to show cause. Petitioner asserts that the panel erred in failing to give weight to this delay in determining his discipline. We disagree. "There is no limitation period applicable to disciplinary proceedings before the State Bar . . . ." (*Yokozeki* v. *State Bar, supra,* 11 Cal.3d at p. 449.) Although delay may be considered in mitigation under certain circumstances (see, e.g., *Vaughn* v. *State Bar* (1973) 9 Cal.3d 698, 703 [108 Cal.Rptr. 806, 511 P.2d 1158]), the panel properly declined to do so in this case for several reasons: (1) it was not clearly explained to Guzman that his action had been dismissed until he hired another lawyer to take over the case in 1981; (2) the notice to show cause was issued approximately one year later; (3) petitioner requested or joined in requests to continue the proceedings on several occasions; and (4) there is no indication that his memory of the events would have been better had these proceedings occurred earlier.[5]

■ Finally, we turn to the question of the severity of the discipline that should be imposed. Petitioner claims that the recommended discipline, including a one-year suspension with execution stayed on certain conditions, is unduly severe. He argues that his only act of serious misconduct was his failure to file a timely motion to withdraw as counsel when he was unable to locate his client. This claim, however, indicates that petitioner still fails to admit responsibility for his negligence in the matters herein. He consistently demonstrated a lack of diligence and concern for his client's interests, and was extremely careless in managing his office. He did not maintain contact with his client, he lost his client's file, and the client lost the opportunity to pursue his case. Additionally, it is particularly disturbing that these events occurred shortly after he had been privately reproved in a separate disciplinary matter.

While we give great weight to the recommendation of the review department, we may impose more severe discipline when it is warranted. (*Finch* v. *State Bar of California* (1981) 28 Cal.3d 659, 666 [170 Cal.Rptr. 629,

---

[4]Under subdivision (b), prior disciplinary records can be produced for the first time at the hearing, provided attorneys under investigation are given copies and the opportunity to present objections to the form of the record.

[5]For example, by 1981 petitioner had already forgotten that Guzman's case had been dismissed in 1978. Also, because petitioner had lost the file by 1981, it could not have been used to refresh his memory even if these proceedings had commenced earlier.

621 P.2d 253]; *Heavey* v. *State Bar* (1976) 17 Cal.3d 553, 560 [131 Cal.Rptr. 406, 551 P.2d 1238].) Under the circumstances, we have concluded that the review department's recommended discipline is too lenient. Some actual suspension is necessary to bring home to petitioner the high degree of care and fiduciary duty he owes to those he represents.

Accordingly, it is ordered that petitioner be suspended from the practice of law for a period of one year, that execution of the order of suspension be stayed, and that he be placed on probation for said period of one year on the conditions that he actually be suspended for the first 30 days, that he pass the Professional Responsibility Examination within the probation period, and that he comply with the other conditions of probation stated in the review department's resolution filed February 11, 1985.[6] This order shall be effective 30 days after the filing of this opinion.

---

[6]These conditions include the filing of quarterly reports with the State Bar Court, in which petitioner shall certify that he has complied with all provisions of the State Bar Act and Rules of Professional Conduct, and the maintenance of a current address with the State Bar Court.