[S.F. No. 23319. July 19, 1976.]

EDWARD EMMETT HEAVEY, Petitioner, v.
THE STATE BAR OF CALIFORNIA; Respondent.

COUNSEL

Joseph I. McNamara and Roy C. Hall for Petitioner.

Herbert M. Rosenthal and Ronald W. Stovitz for Respondent.

OPINION

THE COURT.—We review here a recommendation of the Disciplinary Board of the State Bar that petitioner be suspended for one year, on conditions of probation but with no actual suspension. Petitioner was admitted to practice law in California in 1943 and has no prior discipline record.

Petitioner is charged with three counts of misconduct: misappropriating clients' funds and commingling them with his own;[1] writing to a judge on the merits of a pending case without furnishing a copy of the letters to opposing counsel;[2] and engaging in offensive personality, coupled with a lack of respect for a judicial officer.[3]

The charges arose out of two separate incidents. In the first, petitioner negotiated a $5,600 personal injury damage settlement on behalf of three clients, and deposited the money in a trust account. He deducted his fee and paid his clients from the settlement fund, but withheld $353.65 in order to satisfy a claim by a doctor for treatment of one of petitioner's clients.

Petitioner issued a check to the doctor, but because of a misplacement in the mails the physician did not receive the check for almost a year. During the period prior to the doctor's receipt of the check, the balance in petitioner's trust account fell below $353.65 several times. Indeed, on 13 different occasions the account was overdrawn.

In addition, petitioner admitted that from time to time he used funds from the trust account to pay personal business expenses. He replenished the account not only with personal funds, but also with proceeds of settlement funds belonging to other clients.

The other matter revolved around petitioner's representation of a plaintiff in a wrongful death action. While the case was proceeding to

---

[1] At the time of petitioner's alleged misconduct, rule 9 of the Rules of Professional Conduct provided, in relevant part, "A member of the State Bar shall not commingle the money or other property of a client with his own; and he shall promptly report to the client the receipt by him of all money and other property belonging to such client. Unless the client otherwise directs in writing, he shall promptly deposit his client's funds in a bank or trust company, authorized to do business in the State of California, in a bank account separate from his own account and clearly designated . . . ."

For the sake of convenience the conduct petitioner is charged with in this matter, which has aspects of both misappropriation and commingling, shall be referred to hereinafter simply as commingling.

[2] Former rule 16 read: "A member of the State Bar shall not, in the absence of opposing counsel, communicate with or argue to a judge . . . except in open court upon the merits of a contested matter pending before such judge . . .; nor shall he, without furnishing opposing counsel with a copy thereof, address a written communication to a judge or judicial officer concerning the merits of a contested matter pending before such judge . . . . The rule shall not apply to ex parte matters."

[3] Section 6068 of the Business and Professions Code states: "It is the duty of an attorney: . . . (b) To maintain the respect due to the courts of justice and judicial officers . . ." and "(f) To abstain from all offensive personality . . . ."

trial, attorneys for the defendants submitted a single interrogatory. Following prolonged failure by petitioner's client to answer the interrogatory, even after being ordered to do so by the court, Judge Ira A. Brown of the superior court dismissed the action.

Shortly thereafter, petitioner, on behalf of his client, filed the one-word answer "no" to the interrogatory, and moved to vacate the dismissal. Judge Brown ordered the dismissal vacated on condition that petitioner personally pay to the defendants $600 in attorneys' fees and costs.

Petitioner thereupon embarked on a letter-writing campaign to convince Judge Brown to annul the $600 penalty. In all, petitioner sent the judge four letters asking for relief. In no instance did he send a copy of the letters to opposing counsel.

While the first communication was worded cautiously, petitioner's remarks became more intemperate in succeeding letters. In the third letter, for example, he labeled the judge's ruling a "savage reprisal," and impliedly threatened to campaign against him in the next election. The final letter began with the salutation "Your Majesty," and stated in part, "I have explained to you in careful detail that this penalty involves taking food from the mouths of my little children. I am unable to comply with your edict. Your intransigence in this matter strongly suggests the valor common to draft dodgers."

In addition to the private letters to Judge Brown, petitioner also wrote to a state senator, sending a copy of the letter to the judge. In that letter he declared he would be unable to contribute to the senator's political campaign because of the judge's ruling, and referred to the "rude insulting, hostile manner of Judge Brown at the hearing."

The court rejected all of petitioner's entreaties, and two motions to vacate the order assessing the penalties—on the ground of personal financial hardship to petitioner—were denied. According to a finding of the local administrative committee, petitioner's client suffered no harm from petitioner's refusal to pay the $600 as a condition to vacating the dismissal, because a companion case involving the same accident resulted in a jury verdict which was "res judicata as far as the subject case [is concerned]."

We turn now to a review of the board's recommendations, noting initially that the burden is on the petitioner to show that the board's recommendation is erroneous or unlawful. (*Taylor* v. *State Bar* (1974) 11 Cal.3d 424, 429 [113 Cal.Rptr. 478]; *Sevin* v. *State Bar* (1973) 8 Cal.3d 641, 645 [105 Cal.Rptr. 513, 504 P.2d 449].) ■ Petitioner's only defense to the commingling charge is that no client has ever lost money because of petitioner's improper use of the trust fund. In making this argument, however, he misconstrues the nature of the present proceeding. Actual financial detriment to a client is not the crucial element in a disciplinary proceeding, which seeks to determine not the extent of the damage caused by the attorney but whether his conduct was unprofessional. (*Zitny* v. *State Bar* (1966) 64 Cal.2d 787, 792-793 [51 Cal.Rptr. 825, 415 P.2d 521]; see also *Sodikoff* v. *State Bar* (1975) 14 Cal.3d 422, 431 [121 Cal.Rptr. 467, 535 P.2d 311].)

This point is particularly significant with regard to a violation of rule 9. As we have stated before, the prohibition against commingling was adopted "to provide against the probability in some cases, the possibility in many cases, and the danger in all cases that such commingling will result in the loss of clients' money." (*Peck* v. *The State Bar* (1932) 217 Cal. 47, 51 [17 P.2d 112].) That no harm may result from commingling in a particular case is mere fortuity. An attorney who, like petitioner, spends trust fund money for his personal use, runs the risk that an unexpected contingency—such as a sudden illness—will prevent him from replenishing the fund. And, "as far as the client is concerned the result is the same whether his money is deliberately misappropriated by an attorney or is unintentionally lost by circumstances beyond the control of the attorney." (*Ibid.*) Thus, neither good faith nor restitution is a defense to a commingling charge. (*Silver* v. *State Bar* (1974) 13 Cal.3d 134, 145 [117 Cal.Rptr. 821, 528 P.2d 1157]; *Sevin* v. *State Bar* (1973) *supra*, 8 Cal.3d 641, 646.) The board properly found that petitioner's activities constituted a violation of former rule 9.

■ We also agree with the board that petitioner is culpable for failing to send to opposing counsel copies of the letters written to Judge Brown. Petitioner asserts that former rule 16 did not require him to do so because the messages did not concern "the merits of a contested matter." He claims the letters "contained no reference to the issues involved in the case," and, as the suit had been dismissed by the court, there was no longer a contested matter.

Petitioner misconstrues both the status of the subject case and the rationale behind former rule 16. At the time he wrote the letters to the

judge, the issues in the case involved not only questions of liability for the death of the plaintiff's husband, but also the validity of a dismissal ordered because of petitioner's failure to respond to the defendants' single interrogatory. Thus, petitioner's letters arguing that the dismissal should be unconditionally vacated clearly concerned the merits of the case, which were still being contested.

Equally important, petitioner violated the spirit as well as the text of rule 16. Like rule 12, which prohibited an attorney from communicating with an opposing party in the absence of the party's counsel, rule 16 "was designed to permit an attorney to function adequately in his proper role and to prevent the opposing attorney from impeding his performance in such role." (*Mitton* v. *State Bar* (1969) 71 Cal.2d 525, 534 [78 Cal.Rptr. 649, 455 P.2d 753].) It is, in essence, a rule of fairness meant to insure that all interested sides will be heard on an issue. When petitioner wrote his first letter to the judge, he knew or should have known that the defendants and their counsel would be interested in any request to vacate a dismissal and an order requiring payment to them of $600. Any doubt he may have had should have been resolved when Judge Brown wrote back to him, "Since your letter does not indicate that a copy was sent to opposing counsel, I am sending them a copy of your letter together with this one." In reply to petitioner's second letter, the judge reiterated that "all requests for such action should be by written notice of motion with a copy to the other parties involved." Petitioner's refusal, after two unmistakable warnings, to send copies of his correspondence to opposing counsel demonstrates a brazen disregard of his professional duties. The board's findings on this issue are fully supported by the record.

The issue is somewhat closer on whether the board is correct in concluding that petitioner should be disciplined pursuant to Business and Professions Code section 6068 for the particular language he used in his letters to Judge Brown. On this point we note that five members of the board disagreed with the board's findings, four of them on constitutional grounds.

We need not decide the validity of petitioner's constitutional contentions. The vice of petitioner's letters to the judge was not so much in the gross tastelessness of their prose, but in their apparent intent to improperly induce the annulment of an order properly made. The appropriate means for seeking to persuade a judge to change a decision is by a motion to be heard in open court, with an opportunity for

opposing counsel to air his views. Petitioner's wilful failure to comply with such an elementary principle of fairness is already dealt with, however, in the board's finding that he violated former rule 16. Therefore, little would be added by further discussion of petitioner's letters, particularly because the board was adequately justified in recommending discipline solely on the basis of the violations of rules 9 and 16. Under these circumstances the violation of Business and Professions Code section 6068 is redundant to the rule 16 charge, and we do not find petitioner to have been guilty thereof. In disposing of the issue in this manner, however, we by no means condone petitioner's offensive and totally unwarranted attack against a member of the bench; rather, we condemn such unprofessional conduct.

We turn now to the question of the severity of the discipline that should be imposed. The local administrative committee recommended that petitioner be suspended from the practice of law for two years, on conditions of probation and with thirty days actual suspension. The disciplinary board recommended a one-year suspension, also on conditions of probation but with no actual suspension. Four members dissented, two because they believed the recommended discipline too lenient and two because they felt it was excessive.

We attach great weight to the recommendation of the disciplinary board, but it is not binding on us. We may impose more severe discipline when it is warranted. (*Greenbaum* v. *State Bar* (1976) 15 Cal.3d 893, 904 [126 Cal.Rptr. 785, 544 P.2d 921]; *Sodikoff* v. *State Bar* (1975) *supra,* 14 Cal.3d 422, 432.)

We are not unmindful of the mitigating facts in the present case. Petitioner for more than 30 years has sustained no disciplinary record, and has been active in community affairs. Moreover, none of his offenses appears to involve intentional dishonesty.

Yet he has committed two serious violations of the Rules of Professional Conduct, each of which by itself would merit discipline. While petitioner, after the administrative committee hearing, apologized to Judge Brown for the intemperate nature of his letters to him, there is little indication that petitioner yet realizes the gravity of his violations of former rules 9 and 16. In view of the seriousness of these offenses we have concluded that the board's recommended discipline is inadequate, and adopt instead the recommendation of the local administrative committee.

It is ordered that petitioner be suspended from the practice of law for two years; that execution of the order of suspension be stayed, and that he be placed on probation for said period of two years upon condition that he be actually suspended for the first thirty days. During the remaining period of probation he shall comply with the conditions recommended by the disciplinary board, except that petitioner will not be required to certify in his first quarterly report to the State Bar that he has read the State Bar Act and the Rules of Professional Conduct; in lieu of that requirement, we further order as a condition of probation that within one year after the effective date of this order petitioner pass the Professional Responsibility Examination. (See *Segretti* v. *State Bar* (1976) 15 Cal.3d 878, 891, fn. 8 [126 Cal.Rptr. 793, 544 P.2d 929].) This order is effective 30 days after the filing of this opinion.